Cortland A. Johnson, J.
In these actions, the plaintiffs, a group of contractors, who, on occasions, as a part of their business, engage in the removal of topsoil, seek a judgment declaring void so-called uniform ordinances of the Towns of Hempstead, *404 North Hempstead and Oyster Bay regulating the removal of topsoil.
The regulation of topsoil stripping and the operation of sand and gravel pits has been a matter of concern to the authorities of these towns for many years. A review of the history of the regulation of the stripping of land by topsoil contractors and the maintenance of sand and gravel pits would serve no useful purpose in this opinion.
In 1942, as County Judge of Nassau County, I had occasion to review the decisions affecting legislation of this character and upheld a conviction for a violation of the building code then effective arising from the making of an excavation without a permit. (People v. Gerus, 19 Misc 2d 389.) Again, in February, 1946, this court had occasion to consider an ordinance of the Town of Oyster Bay regulating the removal of topsoil known as the 1943-1944 Ordinance. (Burroughs Landscape Constr. Co. v. Town of Oyster Bay, 186 Misc. 930.) In that case, the conclusion was announced that the town might legally regulate the removal of topsoil by requiring a permit, by compelling the leaving of at least four inches of topsoil upon the surface, by limiting the times of the year during which topsoil might be removed, by prescribing the treatment of the area by the contractor after the removal of the topsoil and by limiting the acreage for which permits would be issued at any one time to any single contractor. This ordinance the court found was not retroactive in character in violation of vested property rights but was a reasonable regulation and a reasonable exercise of the police power in the public interest.
In 1945, the Town Boards of the three towns of Nassau County adopted a new ordinance more stringently regulating removal of topsoil from these townships. The new provisions to which the plaintiffs most seriously object are the following:
Sections 3, 3(a) and 3(b) of article I which require applications for permits to be accompanied by a plan prepared by a duly licensed engineer or land surveyor setting forth a three dimensional extent of the proposed excavation, the exact condition of the plot or premises before the work is completed and the proposed condition of plot or premises after completion of the work. (Not required under the 1943 ordinance.)
Section 3(e) of article I which requires that the applicant file with his permit a certificate of the Commissioner of Public Works of the County of Nassau showing that such proposed excavation and finished grades of the property as shown on the map will not interfere with the comprehensive drainage plan *405 of the County of Nassau or of the Town of Hempstead or other property of said town or county. (Not required under the 1943 ordinance.)
Section 5, which requires that six inches of topsoil be left on the surface from which topsoil is removed. (Only four inches required under 1943 ordinance.)
Section 6, which provides that an application for a certificate of completion shall be accompanied by a map drawn to scale showing a cross section of the affected property, giving elevations thereof as provided in subdivision (b) of section 3, prepared by a duly licensed engineer or land surveyor of the State of New York after the completion of operations, who shall also certify that there is not less than six inches remaining upon the ground from which topsoil has been removed and that the area has been seeded in compliance with the ordinance. (Only cross section of affected property required under 1943 ordinance.)
Section 7, which provides for a fee of approximately $365 for a permit to strip a four-acre parcel, whereas the 1943 ordinance provided for a fee of $96 for a six-acre parcel.
Section 8(b) (1) which limits a permit to a four-acre parcel whereas the 1943 ordinance permitted the stripping of six-acre parcels.
The increased stringency of the ordinance, the plaintiffs argue, indicates a design on the part of the Town Boards not to accomplish a reasonable regulation of topsoil removal but to make such removal so burdensome and unprofitable as to prohibit it entirely.
Although it may be that topsoil operations are not made absolutely impossible by this ordinance, it was conceded by one of the witnesses for defendant towns that, in his opinion, they would certainly be made very difficult. Testimony was also adduced by witnesses on behalf of the several plaintiffs from which the court may well conclude that the profit of topsoil operation under the new ordinance will be so reduced as to make such operation impracticable on most of the land in Nassau County. There was testimony by some of the witnesses that they will be unable to proceed without loss with certain operations for which they had contracted if they were compelled to comply with the terms of the ordinance in question. This fact does not make the ordinances retroactive or subject to the objection that they impair the obligations of contract. The position taken by the court in Burroughs Landscape Constr. Co. v. Town of Oyster Bay (supra) was that even if topsoil *406 operations were being engaged in when the ordinance was enacted, the vested right of the contractor to complete his work would be limited to the area in use at the time of the enactment of the ordinance.
, The Court of Appeals of this State has never had before it the question of whether the State or its subdivisions has the right under any circumstances to prohibit the removal of topsoil. As a matter of fact, that question was specifically avoided in People v. Calvar Corp. (286 N. Y. 419). The Supreme Judicial Court of Massachusetts has recently upheld the right of the town under certain circumstances to prohibit the removal of topsoil entirely. (Town of Burlington v. Dunn, 318 Mass. 216.) Certainly, if topsoil removal or stripping may be prohibited anywhere in the State, it should be lawful to prohibit it on Long Island where topsoil is naturally extremely thin. Testimony places the average depth of topsoil in Nassau County at eight inches. The extreme depth found by any of the operators is stated to be 14 inches, in small and infrequent areas. In many areas there is as little as two inches. The County of Nassau, by reason of its sandy character, is poor in topsoil; indeed, in this respect, nature has furnished it with only the minimum requirements. In some other counties of the State this, of course, is not the fact; yet because of the suburban character of the County of Nassau and its proximity to the City of New York, and because of the reduced costs occasioned by short hauls and nearby deliveries, topsoil contractors have chosen this county for their operation.
The County of Nassau is a suburban county rapidly growing, and in some parts becoming urban. The stripping of topsoil from large tracts of property make the land useless for the growing of crops, or for any other purpose, until the time shall arrive that it may be used as residential or business property. The results to the new and unsuspecting owner who buys a home erected upon such land under the assumption that he may grow a lawn or maintain a garden are apparent. Instead of realizing his dream of what he chooses to call his home in the country, surrounded by trees, a lawn and a garden, he finds that he has purchased a tract of sand upon which nothing will grow without the addition of new topsoil or some substitute. This has a tendency to and does change the character of the neighborhood, both to the detriment of the home owner and the county at large. The authorities are justified in taking every possible precaution to prevent the denuding of the land within the county.
*407 All the plaintiffs are general contractors; none of them will be prevented by this ordinance from carrying on their ordinary business, of which the sale of topsoil forms only a part. I have reached the conclusion that these ordinances are a reasonable exercise of the police power and do not prevent a beneficial use of the land beyond the modest limitation imposed by the statute. The ordinances must accordingly be upheld, and the complaints will be dismissed on the merits, with costs.
Settle judgment and findings, if desired, on notice.